91 F.3d 121
 Pens. Plan Guide P 23924H
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Betty Ruth SHAPIRO, Plaintiff-Appellant,
v.
RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant-Appellee.
 No. 95-2307.
 United States Court of Appeals, First Circuit.
 Aug. 1, 1996.
 
 1
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, Senior U.S. District Judge]
 
 
 2
 Thomas F. Ginnerty for appellant.
 
 
 3
 Robert M. Duffy, with whom Sloan, Duffy, Sweeney & Gates was on brief for appellee.
 
 
 4
 D.R.I.
 
 
 5
 AFFIRMED.
 
 
 6
 Before CYR, Circuit Judge, ALDRICH, Senior Circuit Judge, and GERTNER,* District Judge.
 
 
 7
 GERTNER, District Judge.
 
 
 8
 Plaintiff Betty Ruth Shapiro (Shapiro) brought this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), claiming that she was wrongfully denied benefits under a long-term disability insurance policy provided by her employer and issued by the defendant Reliance Standard Life Insurance Company (Reliance). After a non-jury trial, the district court entered judgment in favor of defendant. On appeal, plaintiff contends that the district court's findings were clearly erroneous. She also contends that she was denied due process of law when the district court issued its decision without offering her the opportunity to present additional evidence or make a closing argument. We affirm.
 
 FACTS
 
 9
 The facts as found by the district court were as follows: On October 13, 1991, plaintiff was involved in a serious motor vehicle accident. She was treated at the scene and returned home. Three days later, however, she went to an emergency room complaining of neck, shoulder and arm pains. She began seeing an orthopaedic surgeon, Dr. Kenneth Morrissey, and remained in his care until May 12, 1992. In May of 1992, plaintiff applied for reemployment with her employer, Fleet/Norstar Financial Group, Inc. (Fleet),[1] after Dr. Morrissey advised her to "give it a try." She was not hired, however, because there were no positions available. In April of 1992, Shapiro filed for disability benefits with Reliance, which provided group long-term disability insurance to Fleet's employees. In response, Reliance sent letters to three of Shapiro's treating physicians in order to evaluate her claim. The doctors did not respond until July of 1992. Two of them stated that they were treating plaintiff for non-disabling maladies unrelated to her disability claim. The third, Dr. Morrissey, found the plaintiff to be "totally disabled" for an "indefinite period,"[2] but that conclusion was belied by his office records. The records indicated the Dr. Morrissey believed the plaintiff to be only partially disabled, and that he had advised plaintiff on May 12, 1992, the last date of his treatment, that she could try to return to her job as a securities input clerk.
 
 
 10
 In August of 1992, defendant retroactively approved plaintiff's application for benefits for the period April 10, 1992 through July 10, 1992. Defendant then requested that plaintiff provide additional information substantiating her claim for benefits beyond July 10, 1992. It sent plaintiff a "Supplementary Report for Continued Disability Benefits" and a "Physical Capacities Evaluation Form" to be filled out by her treating physician. In November, 1992, plaintiff returned the Supplementary Report, but the portion to be completed by her physician was left blank. Instead, plaintiff submitted a record from a Dr. Tarpey, indicating that he was treating plaintiff for asthma and emphysema. Plaintiff never submitted the Physical Capacities Evaluation Form.
 
 
 11
 Defendant next sent letters directly to plaintiff's physicians seeking information as to whether she continued to be disabled. Defendant received no responses to these letters. In February of 1993, plaintiff advised defendant by telephone that she was seeing a chiropractor, Dr. Andrew Lombardi. In March of 1993, defendant sent a letter to Dr. Lombardi seeking information about his treatment and plaintiff's disability. Dr. Lombardi wrote back in April of 1993 providing information about plaintiff's condition, but did not indicate whether plaintiff was disabled, or whether she had been continuously disabled during the period between May of 1992, when she ceased treatment with Dr. Morrissey, and April of 1993.[3] Moreover, Dr. Lombardi's letter stated that plaintiff had "denie[d] any prior accidents/incidents that could have produced the current symptoms. In fact, as plaintiff admitted at trial, she had earlier taken a nine month disability leave for an unrelated neck and back injury in 1989.
 
 
 12
 On April 30, 1993, defendant denied plaintiff's claim for additional benefits. Plaintiff appealed through defendant's internal appeal process, and her claim was again denied.
 
 DISCUSSION
 I. The District Court's Findings
 
 13
 Under the terms of defendant's policy, plaintiff was eligible for disability benefits only if she met four criteria: (1) that she was totally disabled as a result of a sickness or injury covered by the policy, (2) that she was under the regular care of a physician, (3) that she completed a so-called "Elimination Period," and (4) that she submitted satisfactory proof of her total disability. Engaging in a de novo review of plaintiff's claim, see Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the district court found that plaintiff did not satisfy the first, second or fourth of these requirements, and therefore was ineligible for benefits. We will vacate these findings only if they are clearly erroneous. Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 152 (1st Cir.1990). None of them is.
 
 
 14
 First, the district court found that plaintiff had failed to submit satisfactory proof of her total disability to defendant. This finding is not clearly erroneous. Although Dr. Morrissey did aver that, as of April 7, 1992, plaintiff was totally disabled, one month later, on May 12, 1992, Dr. Morrissey advised plaintiff that she could try to return to work. Indeed, plaintiff did attempt to return to work at that time, and was only refused because of the lack of an available position. Defendant, aware that Dr. Morrissey had advised plaintiff she could try to return to work, reasonably questioned whether she remained totally disabled, and engaged in numerous attempts to obtain additional proof to support her claim. Despite these attempts, plaintiff never produced any evidence of her disability. The district court's finding to that effect was not clearly erroneous.
 
 
 15
 The district court also found that plaintiff was not under the regular care of a physician. No evidence was presented that plaintiff was regularly seeing any medical provider from May 12, 1992, when she ceased treatment with Dr. Morrissey, until February 22, 1993, when she started treatment with Dr. Lombardi. There was also evidence that plaintiff had ceased all physical therapy during this period. The district court's finding that plaintiff was not under the treatment of a physician was not clearly in error.
 
 
 16
 Finally, the district court found that plaintiff was not, in fact, totally disabled during the relevant period. Although Dr. Lombardi testified at trial that he believed plaintiff to be totally disabled, and that her disability had been in place during the relevant period, the district court did not credit this testimony as it was inconsistent with the other evidence, including Dr. Morrissey's advice on May 12, 1992 that if plaintiff wanted to return to work she should "give it a try." The district court also found that Dr. Lombardi's testimony was based on false statements provided to him by plaintiff, including a false statement that she had never been in any other accidents which could have caused her current symptoms. (In fact, plaintiff had missed work for nine months in 1989 after complaining of neck and back problems.) Dr. Lombardi likewise ignored the fact that plaintiff had reapplied for work just after her initial application for disability benefits had been filed. In light of the conflicting evidence, the district court was entitled to reach the conclusion that it did.
 
 II. Due Process Claim
 
 17
 The trial was held on December 19, 1994. The district court heard three live witnesses: the plaintiff, one of her co-workers, and an employee of the defendant. At the close of the day, the district court directed the parties to depose plaintiff's two remaining witnesses, Drs. Morrissey and Lombardi, and to file edited transcripts with the court. This was done a few weeks later. Approximately one year later, on November 2, 1995, the district court issued its decision.
 
 
 18
 Plaintiff now contends that the district court denied her due process of law because it failed to provide an opportunity for closing argument, or for the submission of additional evidence, prior to issuing its decision. Plaintiff states that if given the opportunity, she would have presented evidence that an Administrative Law Judge of the Social Security Administration had found her to be totally disabled in April of 1995. Putting aside the question of whether this decision was relevant or otherwise admissible, plaintiff waived her due process claim by failing to raise it to the court below. Poliquin v. Garden Way, Inc., 989 F.2d 527, 531 (1st Cir.1993). Plaintiff never requested the opportunity to present additional evidence or to make a closing argument in the eleven months between the trial date and the issuance of the court's decision. Moreover, plaintiff never moved to alter or amend the judgment under Fed.R.Civ.P. 59.
 
 CONCLUSION
 
 19
 For the foregoing reasons, the judgment of the district court is affirmed. Costs to appellees.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 Although it is not clear from the record, plaintiff apparently ceased working sometime after her accident
 
 
 [2]
 Dr. Morrissey had reported this conclusion on an "Attending Physician's Statement of Disability" dated April 7, 1992
 
 
 [3]
 This was significant because, under the terms of defendant's policy, plaintiff's benefits would terminate as soon as she ceased to be totally disabled. Since she was no longer working for Fleet in 1993, she needed to show that she was continuously disabled from the time when she was so employed in order to continue to receive benefits